IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TROY KIM KELLY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> COMMISSIONER, SOCIAL ) <br> SECURITY ADMINISTRATION; ) <br> ) <br> ) <br> Defendant. ) | No. 4:21-00504-CV-RK |

## ORDER

Before the Court is Plaintiff's appeal brought under 42 U.S.C. § 405(g) seeking review of Defendant Commissioner of Social Security Administration's ("SSA") denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). For the reasons below, the decision of the ALJ is **AFFIRMED**.

## Standard of Review

The Court's review of the ALJ's decision to deny disability benefits is limited to determining if the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). In determining whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). "If the ALJ's decision is supported by substantial evidence, [the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (citing *Davis*, 239 F.3d at 966). The Court does not "re-weigh the evidence presented to the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d

549, 555 (8th Cir. 2003)).  The Court must "defer heavily to the findings and conclusions of the [ALJ]."  *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citation omitted).

## Discussion

By way of overview, the ALJ determined that Plaintiff has the following severe impairments:  history of a right hamstring tear, lumbar spine osteopenia and degenerative disc disease, cervical spine degenerative disc disease, bilateral knee degenerative joint disease, left shoulder degenerative joint disease, asthma, bipolar disorder, personality disorder, anxiety, depression, and a history of substance abuse.  However, the ALJ found that none of Plaintiff's impairments, whether considered alone or in combination, meet or medically equal the criteria of one of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1 ("Listing").  Additionally, the ALJ found that despite his limitations, during the closed period between August 22, 2012, and September 30, 2017, Plaintiff retained the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently.  He could stand and/or walk for four hours in an eight-hour workday.  He could sit for up to six hours in an eight-hour workday.  He could occasionally climb ramps and stairs.  He could never climb ladders, ropes, or scaffolds.  He could occasionally stoop and crouch.  He could never kneel or crawl.  He should have avoided overhead reaching bilaterally, but he could have frequently reached in all other directions bilaterally.  He should have avoided extreme cold weather, wet weather conditions, and excessive vibrations.  He could have occasionally tolerated pulmonary irritants such as fumes, odors, dust, gases, and poorly ventilated areas.  He should have avoided operational control of moving machinery, unprotected heights, and hazardous machinery.  He could have concentrated, persisted, and remained on task and pace to perform simple, routine and repetitive tasks, which may have involved multiple non-complex simple, routine, and repetitive steps, tasks, or instructions. He could not have interacted with the public.  He could have worked around co-workers but with only occasional interaction with coworkers and supervisors.  Although the ALJ found that Plaintiff is unable to perform any past relevant work, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, Plaintiff could have performed jobs that exist in significant numbers in the national economy during the relevant time period.

On appeal Plaintiff contends the Commissioner failed to sustain her burden at step five, the ALJ's RFC as to Plaintiff's mental functional limitations is unsupported by substantial evidence, the ALJ's RFC as to Plaintiff's physical functional limitations is unsupported by substantial

evidence, and the ALJ's decision is otherwise unsupported in that the ALJ improperly relied on Plaintiff's failure to stop smoking, the ALJ incorrectly stated Plaintiff's use of a cane was not necessary, and the ALJ incorrectly cited Plaintiff's improvement with treatment as inconsistent with his allegations of disability.[1]

I. **The ALJ's mental and physical RFC is supported by substantial evidence**[2]

Plaintiff argues that the ALJ's RFC as to Plaintiff's mental functional limitations is unsupported by substantial evidence. Specifically, Plaintiff argues because the ALJ afforded "significant" weight to Dr. Isenberg's findings (Tr. 1849), and Dr. Isenberg opined, in part, that Plaintiff was moderately limited in the ability to carry out detailed instructions and moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 880), the ALJ's decision not to include these limitations in the RFC (Tr. 1843-1844) was not supported by substantial evidence.

The ALJ is responsible for determining a claimant's RFC, which is defined as what a claimant "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC assessment is based on all relevant evidence, including "the claimant's own descriptions of his or her limitations." *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). However, it is primarily a medical question. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Ultimately, it is the claimant's burden to establish his or her RFC. *See Eichelberger v. Barnhart*, 390 F.3d 584, 591-92 (8th Cir. 2004); *Masterson*, 363 F.3d at 737. An ALJ is not required to list and reject every possible limitation. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Here, the ALJ was clear as to which of Plaintiff's alleged mental limitations she found supported by the record and which she did not. *Id.* Additionally, medical opinion evidence is only one factor for the ALJ to consider in formulating the RFC.

Further, an ALJ is "not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). Instead, an ALJ may properly develop an RFC based on all of the

---

[1] The Court finds much of Defendant's brief persuasive. Portions are incorporated without further attribution.

[2] Because Plaintiff's claim was filed before March 27, 2017, the ALJ properly evaluated medical opinions under 20 C.F.R. § 416.927. (Tr. 1844-51.)

3

evidence. *Lockwood v. Colvin*, 627 F. App'x 575, 576 (8th Cir. 2015). "SSR 96-8p requires only that the evidence, both medical and non-medical, be discussed in a way that would support each conclusion, not that each conclusion must be individually discussed and independently supported." *Wilfong v. Berryhill*, No. 4:17-cv-2747-SNLJ, 2018 WL 4489453, at *4 (Sept. 19, 2018).

Here, in formulating the RFC as to Plaintiff's mental functional limitations, the ALJ considered evidence that Plaintiff exhibited intact cognitive functioning, memory, thought content, insight, and/or judgment at numerous examinations. (Tr. 1847.) The ALJ further noted Plaintiff was also cooperative, appropriate, and alert at numerous examinations (*Id.*). The ALJ considered that Plaintiff's cocaine use disorder was in remission, that his cannabis use disorder was "mild," and that Plaintiff "denied having any recent alcohol problems and denied using any cocaine in the past 10 years" during a June 11, 2016 psychological evaluation. (*Id.*). The ALJ observed that Shawn McDaniel, Psy.D., noted on June 11, 2016, that "[t]here is currently little evidence to support the presence of a prominent mood or anxiety disorder." (*Id.*) The ALJ also considered that Plaintiff was able to engage in a wide variety of activities of daily living, including living with others, helping take care of his mother, managing his personal care, preparing meals, cleaning, folding laundry, washing dishes, mowing his lawn, going outside, leaving the house alone, walking, driving, riding in a car, shopping, handling a savings account, counting change, using a checkbook, watching television, reading, writing, spending time with others, attending religious services, volunteering in a food pantry, and talking on the telephone. (Tr. 1847-48.) The ALJ noted that Plaintiff did not report any limitation in his ability to provide self-care and personal hygiene, eat and prepare food, communicate, clean and care for his residence during his January 15, 2013 consultative examination. (*Id.* at 1848.)

As to Dr. Isenberg, the ALJ considered his findings that on July 21, 2016, Plaintiff suffered from severe "Personality Disorders," severe "Affective Disorders," severe "Anxiety Disorders," and severe "Drugs, Substance Addiction Disorders;" from a mild restriction of activities of daily living; moderate difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence or pace; and no repeated episodes of decompensation. (Tr. 1848.) The ALJ noted that Dr. Isenberg found Plaintiff could "perform less complex tasks not involving substantial public contact." (*Id.*). The ALJ afforded Dr. Isenberg's findings significant weight because of (1) the consistency of Dr. Isenberg's finding that Plaintiff suffered from severe mental impairments, mild to moderate limitations, and no repeated episodes of decompensation with

4

Plaintiff's diagnoses, mental status examinations results, consultative examination results, treatment history, and activities of daily living; (2) Dr. Isenberg's support of his findings with detailed explanations citing to objective evidence; and (3) Dr. Isenberg's provision of a detailed assessment of Plaintiff's residual functional capacity.

In formulating the RFC as to Plaintiff's mental functional limitations, the ALJ may not have "linked her analysis to each particular RFC limitation, but the totality of her analysis makes clear she followed the evidentiary pathway set forth in SSR 96-8p." *Wilfong*, 2018 WL 4489453, at *4. Plaintiff's argument is without merit.

Plaintiff next argues the ALJ's RFC as to Plaintiff's physical functional limitations is unsupported by substantial evidence. Specifically, Plaintiff argues because the ALJ rejected the opinions from Dr. Parmet and Dr. Copening as to Plaintiff's physical functional limitations, there are no other medical opinions supporting the ALJ's RFC for "light" work with postural limitations, and the ALJ impermissibly relied on her own purported "medical expertise" to establish the RFC as to Plaintiff's physical functional limitations.

Regarding Plaintiff's physical functioning, the ALJ first considered the opinion of Allen Parmet, M.D. (Tr. 595-602, 1849-50.) Dr. Parmet saw Plaintiff in January 2013 for a consultative examination, after which he concluded that Plaintiff could function "at the light-to-medium level" of exertion with no additional restrictions in sitting, standing, walking, lifting, carrying, handling objects, speaking, seeing, or traveling. (Tr. 599, 1849.)

The ALJ assigned Dr. Parmet's opinion little weight and assessed a far more restrictive physical RFC. (Tr. 1843-44, 1849-50.) The ALJ acknowledged that Dr. Parmet had the benefit of examining Plaintiff but found that the doctor did not support his opinion with detailed explanation and was unable to consider additional evidence that became available in the years after he offered his opinion. (Tr. 595-99, 1849.) *See* 20 C.F.R. §§ 416.927(c)(1), (c)(3), (c)(6). The ALJ also found Dr. Parmet's opinion largely inconsistent with the present record, including diagnoses, imaging, examination results, treatment history, and daily activities that supported additional limitations to a significantly reduced range of light work (Tr. 1849, citing, *e.g.* Tr. 213-20, 597-98, 725, 730, 778-79, 1093, 1123, 1162, 1183, 1378, 1565.) *See* 20 C.F.R. § 416.927(c)(4).

Next, the ALJ considered and gave some weight to the opinion of Tell Copening, M.D. (Tr. 686-87, 1849-50.) On February 27, 2014, in a two-page medical report, Dr. Copening stated

5

that Plaintiff "cannot stand for 1 hr" and "cannot raise[] arm (L) above horizontal." (Tr. 687, 1849.) Dr. Copening also checked boxes to indicate that Plaintiff had a disability expected to last for 13 or more months. (Tr. 687, 1849.)

The ALJ found Dr. Copening's opinion only partially consistent with the evidence in the record. (Tr. 1849-50.) *See* 20 C.F.R. § 416.927(c)(4). The ALJ found a restriction to not reaching above horizontal with the left arm was consistent with Plaintiff's diagnoses, imaging, examination results, treatment history, and daily activities. (Tr. 1849, citing, *e.g.*, Tr. 213-20, 597-98, 725, 730, 778-79, 1093, 1123, 1162, 1183, 1378; 1565.) However, the ALJ found a restriction to standing for one hour inconsistent with the same evidence. (Tr. 1849.) *See* 20 C.F.R. § 416.927(c)(4). The ALJ also found that Dr. Copening failed to support the opinion with explanation or specific evidence and was not able to consider additional evidence that became available after the opinion was submitted. (Tr. 686-87, 1849-50.) *See* 20 C.F.R. §§ 416.927(c)(3), (c)(6). Finally, the ALJ noted that Dr. Copening's statement that Plaintiff had a disability was an opinion on an issue reserved to the Commissioner, that the claimant was disabled touches upon an issue reserved to the Commissioner. (Tr. 1849-50.) Such opinions are not considered medical opinions under the agency's regulations and can never be granted controlling weight. 20 C.F.R. § 416.927(d)(1); *see also Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019) (quoting *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010)). For these reasons, substantial evidence supports the ALJ's decision to give no weight to Dr. Copening's opinion regarding standing, but significant weight to the opinion regarding raising the left arm above horizontal. (Tr. 1849-50.) Plaintiff does not point to any error.

Plaintiff does not challenge the ALJ's analysis of Dr. Parmet's or Dr. Copening's opinions in any respect. Instead, he suggests that, because the ALJ did not fully credit any one medical opinion, the physical restrictions in the RFC could not have been supported by substantial evidence without additional development of the record. This argument is without merit. Although there must be some medical evidence supporting the ALJ's RFC finding, there is no requirement that the evidence take the form of a medical opinion. *See Hensley*, 829 F.3d at 931-32 (noting that, although the RFC is a medical question and must be supported by some medical evidence of the claimant's ability to function in workplace, "there is no requirement that an RFC finding be supported by a specific medical opinion" (citations omitted)); *Lockwood*, 627 F. App'x at 576 ("'[I]n evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence

6

exclusively . . . . Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.'" (quoting *Cox*, 495 F.3d at 619-20) (ellipses in original)); *see also Masciovecchio v. Berryhill*, 4:16-CV-01048-DGK, 2017 WL 3741011, at *4 (W.D. Mo. Aug. 30, 2017) (rejecting plaintiff's argument that the record was insufficient to assess the RFC where the ALJ discounted opinions from treating sources as "based on the faulty assumption that an ALJ must have a medical opinion to assess the claimant's RFC," and noting that "[i]f accepted, this argument would shift the burden of proving RFC from the claimant to the Commission" (citations omitted)); *Peterson v. Colvin*, No. 13-0329 CV W-ODS, 2013 WL 6237868, at *4 (W.D. Mo. Dec. 3, 2013) ("Plaintiff overstates the law by contending there must be medical evidence that precisely supports each component of the RFC." (citations omitted)).

Substantial evidence supports the RFC, and Plaintiff has established no error in the ALJ's evaluation of the medical opinions regarding physical functioning that warrants remand for further consideration.

In addition to complaints about the ALJ's evaluation of the medical opinions as to physical functioning, Plaintiff argues the ALJ failed to consider Plaintiff's carpal tunnel syndrome and elbow impairment. As an initial matter, as best as can be discerned, Plaintiff did not specifically allege carpal tunnel syndrome and elbow impairment. At the hearing, his attorney agreed the severe impairments alleged were limited to "history of right hamstring tear, osteopenia and degenerative disc disease in the lumbar spine, degenerative disc disease in the cervical spine, degenerative joint disease in both knees, degenerative joint disease in the left shoulder, asthma, bipolar disorder – personality disorder, and history of substance abuse." (Doc. 7-23 at 43.)

Regardless, an ALJ is not required to list and reject every possible limitation. *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090-91 (8th Cir. 2018) (explaining that courts review the record "to ensure that an ALJ does not disregard evidence or ignore potential limitations," but do not require an ALJ "to mechanically list and reject every possible limitation" (citations omitted)). Indeed, an ALJ may disbelieve subjective complaints based on inconsistencies in the evidence as a whole. *Chaney v. Colvin*, 812 F.3d 672, 677 (8th Cir. 2016) (citing *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005)). In this case, the ALJ made clear which of Plaintiff's alleged physical limitations she found supported by the record and, by implication, which she did not. *See McCoy*, 648 F.3d at 615 (ALJ's implicit finding that claimant did not have limitations beyond

those listed in the RFC was sufficient); *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003), 349 F.3d at 567 (because the RFC specifically listed claimant's limitations, the Court could reasonably believe that functions omitted from the RFC were those the ALJ found not limited). The ALJ reasonably accounted for Plaintiff's complaints, including those related to his use of his arms, by limiting him to a reduced range of light work—a restrictive finding that included lifting and carrying no more than 20 pounds occasionally and 10 pounds frequently, no crawling, no climbing of ladders or ropes, no overhead reaching, and no more than frequent reaching in all other directions. (Tr. 1843.)

Nor has Plaintiff identified evidence in the record that demands additional limitations beyond those assessed in the RFC. Instead, he cites only a few sporadic instances of mostly mild findings. (Doc. 11 at 24) (citing Tr. 1221, 1460, 1466-67, 1519-20). Specifically, in June 2015, testing suggested mild to moderate left carpal tunnel syndrome, but the provider recommended only that Plaintiff "observe" his symptoms of arm numbness, which the provider believed may have been due to carpal tunnel syndrome or ulnar neuropathy. (Tr. 1221.) And as the ALJ specifically noted, the provider observed intact sensation and full (5/5) motor strength throughout the upper extremities. (Tr. 1220, 1847.) In July 2016, Plaintiff reported "a lot of pain" in his elbow when he raised his right hand, and a provider assessed tennis elbow.[3] (Tr. 1466-67.) X-rays showed osteoarthritis of the elbow,[4] but the provider explained that elbow x-rays included "no impressions by the radiologist that [there was] any type of severe arthritis." (Tr. 1459-60, 1519.) And a right elbow MRI the next month showed mild triceps tendon inflammation and a partial tear. (Tr. 1459-60, 1520.) The ALJ reasonably accounted for these complaints and findings by limiting Plaintiff to the lifting requirements of light work and to no overhead reaching. (Tr. 1843-44.)

Plaintiff's argument that the ALJ failed to consider Plaintiff's carpal tunnel syndrome and elbow impairment is without merit.

---

[3] "Tennis elbow (lateral epicondylitis) is a painful condition that occurs when tendons in your elbow are overloaded, usually by repetitive motions of the wrist and arm." Tennis Elbow, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/tennis-elbow/symptoms-causes/syc-20351987 (last visited August 29, 2022). "Rest and over-the-counter pain relievers often help relieve tennis elbow. If conservative treatments don't help or if symptoms are disabling, your doctor might suggest surgery." *Id.*

[4] This was reported in September 2016 as "left" shoulder osteoarthritis, but that appears to have been a typographical error. (Tr. 1460; *compare* Tr. 1459, 1466-67, 1519.)

## II. The ALJ's decision is otherwise supported by substantial evidence

Plaintiff argues the ALJ's decision is otherwise unsupported, in that the ALJ improperly relied on Plaintiff's failure to stop smoking, the ALJ incorrectly stated Plaintiff's use of a cane was not necessary, and the ALJ incorrectly cited Plaintiff's improvement with treatment as inconsistent with his allegations of disability.

In addition to the opinion evidence, the ALJ considered other factors in evaluating Plaintiff's subjective complaints, found Plaintiff's debilitating complaints inconsistent with the record as a whole, and determined that the record supported limitations consistent with a reduced range of light work. (Tr. 1843-51). *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p. An ALJ is not required to discuss each possible factor in every case. *See, e.g., Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). "If an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, [the courts] will normally defer to that judgment." *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir.2008)) (internal quotation marks omitted).

In particular, the ALJ discussed Plaintiff's medical treatment in great detail and found his course of treatment inconsistent with his debilitating complaints. (Tr. 1844-48.) *See* 20 C.F.R. § 416.929(c)(3)(v) (providing that the agency will consider a claimant's course of treatment when evaluating symptoms). In particular, the ALJ found that Plaintiff did not always comply with treatment and that many of his symptoms improved when he did comply. (Tr. 1848, citing, *e.g.*, Tr. 576, 580, 1798, 1800, 610, 783, 1327, 1474, 1492, 1507.) The ALJ found Plaintiff's disabling complaints further unsupported by his reported daily activities, which included helping take care of his mother (who was in her 80s), preparing meals, cleaning, driving, and washing dishes and mowing the lawn for 30 minutes at a time. (Tr. 1847-48, citing, *e.g.*, Tr. 193-200, 213-20, 596, 715.) In fact, a doctor noted in February of 2016 that Plaintiff had shown a disc protrusion in spring 2015, but that Plaintiff was "a house painter" and wanted to wait until "after his busy season in the summer" to return for surgical treatment. (Tr. 1327.) Activities that are inconsistent with a claimant's particular allegations may reasonably discredit those allegations. *See Davis v. Apfel*, 239 F.3d 962, 967 (8th Cir. 2001) (citing *Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir. 1987)). The ALJ also found Plaintiff's allegations unsupported by his relatively sporadic work history and his part-time work during the relevant period. (Tr. 1848, citing, *e.g.*, Tr. 1039, 1357, 2022-25,

9

2027, 2028-30.) These were valid factors to consider. *See Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) (noting that "a lack of work history may indicate a lack of motivation to work rather than a lack of ability"); 20 C.F.R. § 416.971 (even part-time work may show that a claimant could perform more work than he actually did). In fact, although he applied for SSI in August 2012, Plaintiff reported working as a dishwasher at a fast-food restaurant until March 2013 and as a self-employed painted until December 2015. (Tr. 92, 1039.)

Plaintiff's contention that the ALJ improperly concluded that his failure to quit smoking "is an indication of his lack of credibility" does not support remand. As discussed above, the ALJ gave multiple reasons for discounting Plaintiff's allegedly debilitating complaints, and her analysis is closely and affirmatively linked to substantial evidence in the record. (Tr. 1843-51.) Again, so long as the ALJ discredits a claimant's testimony and gives a good reason for doing so, the courts "will normally defer to that judgment." *Whitman*, 762 F.3d at 707 (citing *Finch*, 547 F.3d at 935) (internal quotation marks omitted). In fact, the ALJ's subjective symptoms assessment is not a value judgment or even a traditional credibility assessment, but an evaluation of "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence." SSR 16-3p. In fact, SSR 16-3p specifically "clarif[ied] that the subjective symptom evaluation is not an examination of an individual's character." *Id.* Moreover, the Eighth Circuit has explained that a failure to stop smoking may be one piece of evidence for an ALJ to consider in evaluating a claimant's subjective complaints. *See Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006) ("[A]n ALJ may properly consider the claimant's noncompliance with a treating physician's directions, including failing to take prescription medications, seek treatment, and quit smoking." (internal citations omitted)).

Plaintiff's disagreement with the ALJ's findings regarding his improvement with treatment and use of a cane also does not warrant remand. Improvement with treatment is a valid factor to consider. *See Lawson v. Colvin*, 807 F.3d 962, 965 (8th Cir. 2015) (approving ALJ's consideration of improvement with treatment). And Plaintiff's mere disagreement with the ALJ's conclusions cannot warrant remand. *See Cline*, 771 F.3d at 1102 ("As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently." (citation omitted)). As the Eighth Circuit has held, if the evidence supports two inconsistent positions and one of those positions represents the Commissioner's findings,

10

courts will affirm the Commissioner's decision. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015).

Plaintiff's argument that the ALJ's decision is otherwise unsupported on the grounds discussed above is without merit.

### III. Substantial evidence supports the ALJ's determination at step five

At the administrative hearing, a vocational expert testified that an individual with Plaintiff's vocational profile and RFC could perform light work in the occupations of inserting machine operator, electronics sub-assembler, and bench assembler—representing a total of approximately 70,800 jobs in the national economy.[5] (Tr. 1899-1901).

Plaintiff first argues that the vocational expert and ALJ failed to resolve an inconsistency between the expert's testimony and the Dictionary of Occupational Titles (DOT) regarding overhead reaching.

In response to a question from the ALJ, the vocational expert specifically stated that her testimony had been consistent with the DOT and its companion publication, which, she explained, do not actually address limitations involving overhead reaching. (Tr. 1903.) To supplement the information in the DOT in this area, the vocational expert stated that she relied on her "education and experience as a vocational counselor." (Tr. 1903.) The ALJ was entitled to rely on the vocational expert's experience to supplement the information in the DOT. *See* SSR 00-4p (explaining that evidence from vocational experts "can include information not listed in the DOT" and that information about a job's requirements may be obtained from a vocational expert's "experience in job placement or career counseling"); *see also Gieseke v. Colvin*, 770 F.3d 1186, 1189 (8th Cir. 2014) (explaining that whether a vocational expert's explanations were based upon insufficient personal experience is a "fact issue[] for the ALJ to resolve" (quoting *Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014))).

Plaintiff also contends that certain mental restrictions assessed in the RFC (to "simple, routine[,] and repetitive tasks, which may have involved multiple non-complex simple, routine, and repetitive steps, tasks, or instructions" (Tr. 1844)) were exceeded by the jobs identified at the

---

[5] In response to an initial hypothetical question, the vocational expert identified a total number of available jobs of 177,000. (Tr. 1899-1900.) After the ALJ added an additional restriction to standing and/or walking for up to four hours, bringing the hypothetical question fully in line with the RFC, the vocational expert testified that the 177,000 jobs would be reduced in number by approximately 60 percent. (Tr. 1900-01.)

hearing, which the DOT assigns a reasoning level of two, indicating a need to "apply common-sense understanding to carry out detailed by uninvolved written or oral instructions."[6]

In *Moore v. Astrue*, the Eighth Circuit concluded that a similar restriction in the RFC did not directly conflict with the requirements of level-two reasoning. 623 F.3d 599, 604 (8th Cir. 2010). The *Moore* court specifically explained that an RFC for "simple job instructions" and the ability to perform "simple, routine, and repetitive work activity at the unskilled task level" did not conflict with a requirement to "apply common-sense understanding to carry out detailed but uninvolved written or oral instructions." *Id.* at 601-04. Similarly, Plaintiff has identified no inconsistency between the vocational expert testimony and the DOT on this point.

Plaintiff's argument that the vocational expert and ALJ failed to resolve inconsistencies between the expert's testimony and the DOT is without merit.

## Conclusion[7]

Having carefully reviewed the record before the Court and the parties' submissions on appeal, the Court concludes that substantial evidence on the record as a whole supports the ALJ's decision for the reasons set forth in the Commissioner's brief.

IT IS THEREFORE ORDERED that the decision of the ALJ is **AFFIRMED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: September 2, 2022

---

[6] The DOT identifies 6 levels of reasoning, ranging from applying "commonsense understanding to carry out simple one- or two-step instructions" at level 1 to applying "principles of logical or scientific thinking to a wide range of intellectual and practical problems" at level 6. *See* US Dep't of Labor, DOT App'x C.

[7] In so ruling, the Court is mindful that reversal of the ALJ's denial of disability benefits should not occur "so long as the ALJ's decision falls within the 'available zone of choice.'" *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008) (citations omitted). "The decision of the ALJ is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (citation omitted). Instead, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Id.* (citation omitted). Here, Plaintiff points to no legal error, and substantial evidence in the record supports the ALJ's decision.